**UNITED SALES, INC., Plaintiff,**

and

**The Fulton Lobster Company,
Third–Party Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 178–88C.

United States Court of Federal Claims.

Aug. 30, 1995.

OPINION

HORN, Judge.

This case comes before the court on defendant's motion for partial dismissal, filed pursuant to Rules 12(b)(1) and 12(h)(3) of the United States Court of Federal Claims.[1] Plaintiff, United Sales, Inc., filed this suit pursuant to the Contract Disputes Act, 41 U.S.C. §§ 601–609 (1988 & Supp.1993) and the Tucker Act, 28 U.S.C. § 1491 (1988 & Supp.1993). The complaint alleges breach of contract and wrongful withholding of funds by the defendant. The plaintiff also has requested injunctive relief to preclude the defendant from an administrative offset and from the continued withholding of funds, which plaintiff alleges it is due from the government.

## FACTS

The plaintiff, United Sales, is a commission broker and procurer of foodstuffs for government agencies on behalf of producers and manufacturers throughout the United States. Pursuant to Blanket Purchase Agreement N00189–86–A–7510, and in response to call numbers M26A and M27A set forth in the Blanket Purchase Agreement, United Sales delivered to the Department of the Navy, Naval Supply Center in Norfolk, Virginia (Navy), 1,267 cases of frozen spiney lobster tails, at 30 pounds per case and $10.01 per pound.

The complaint alleges that the lobsters procured by United Sales were supplied by the third-party plaintiff, Fulton Lobster Company, Inc. (Fulton), of Elizabeth, New Jersey. Prior to shipment to the Naval Supply Center, the seafood was examined for quality and condition by the United States Department of Commerce, which issued Lot Inspection Certificates CL 12756 and CL 12757 on November 17, 1986 and December

Leonard D. Levine, Virginia Beach, Virginia, attorney of record, for plaintiff.

A. Lauren Springer Moore, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., with whom were David M. Cohen, and the Assistant Attorney General, attorneys of record, for defendant.

1. Following enactment of the Court of Federal Claims Technical and Procedural Improvements Act of 1992, Pub.L. No. 102–572, § 902(a)(2), 106 Stat. 4506 (1992), the United States Claims Court was renamed the United States Court of Federal Claims. In accordance with General Order 33 issued by the United States Court of Federal Claims, the court adopted the rules of the United States Claims Court. The substance of the rules of the court, discussed herein, is unaffected by the legislation, other than with respect to the name change of the court and, therefore, the name change of the rules. General Order 33, however, also indicates that if there is a conflict between the new statute and the rules, the statute will control.

9, 1986, respectively. These certificates attested to the size, quality and quantity of the seafood delivered pursuant to call numbers M26A and M27A of Blanket Purchase Agreement N00189–86–A–7150. Further, according to the complaint, "[t]he certificates were duly supplemented by the Commerce Department on March 19, 1987." In addition, the complaint states that upon receipt of the seafood shipment at the Naval Supply Center in Norfolk, Virginia, employees of the Naval Supply Center inspected, approved and accepted the seafood. Thereafter, the defendant paid its obligation in full on call numbers M26A and M27A, by tendering the sum of $380,480.10 to United Sales. After deducting its commissions and expenses of sale, United Sales remitted the balance of the funds to Fulton, the supplier. The complaint also states that on March 5, 1987, after full payment had been made by the government to United Sales, the Navy notified United Sales, for the first time, that it wished to revoke its acceptance of 606 cases of the seafood as not conforming to the contract specifications.

Plaintiff, United Sales, alleges that the events associated with performance and payment under call numbers M26A and M27A pursuant to Blanket Purchase Agreement N00189–86–A–7510 were then reviewed by "an administrative contracting officer, who, after consideration of the matter, issued his final decision letter on November 23, 1987." The correspondence between the contracting officer and United Sales leading to the November 23, 1987 contracting officer's decision is not included in the record before this court. The contracting officer's decision, however, states, in part:

> By letter dated 5 March 1987, you were officially notified of the Navy's revocation of acceptance of certain non-conforming spiney lobster tails tendered in response to call numbers M26A and M27A of Blanket Purchase Agreement ("BPA") N00189–86–A–7150. Review has disclosed that of the 1267 cases delivered under these BPA calls, 606 have significant deficiencies warranting revocation. At the contract price of $10.01 per pound and 30 pounds per case, the contracting officer hereby determines your firm indebted to the Navy in the amount of $181,981.80.

> \*   \*   \*   \*   \*   \*

> While numerous attempts have been made to resolve this problem, all have proved futile. Your firm apparently has taken the position that as a broker you are not responsible for non-conformities tendered by your supplier directly to the Navy. You fail to recognize, however, that BPA N00189–86–A–7510 is with United Sales, Inc.; calls M26A and M27A were placed against BPA N00189–86–A 7510; and, as such, United Sales, Inc. is primarily responsible for any material provided. Failings of your suppliers or subcontractors are your responsibility.

Subsequent to the issuance of the contracting officer's final decision, the Navy administratively offset and withheld funds (apparently in the amount of $91,000.00), allegedly due to United Sales on separate contracts between the government and United Sales, unrelated to the lobster tails supplied by Fulton under call numbers M26A and M27A of Blanket Purchase Agreement N00189–86–A–7150. Plaintiff responded to the government's offset and withholding of funds by filing the instant complaint in the United States Claims Court, now the United States Court of Federal Claims.

Count I, titled "The Claim of the United States," alleges 1,267 cases of spiney lobster tails supplied by Fulton were initially accepted by the defendant and that the Navy paid $380,480.10 to United Sales, representing full payment for delivery under call numbers M26A and M27A of Blanket Purchase Agreement N00189–96–A–7150. After deducting its commissions and expenses of sale, United Sales sent the balance of the funds in payment to its supplier, Fulton. Subsequently, the Navy notified United Sales of its intention to revoke acceptance of 606 cases of the seafood on the basis of non-conformity to the contract specifications. United Sales further alleges that the seafood supplied was of the quantity and quality called for by the contract and had been accepted by the defendant. United Sales also maintains that if the seafood spoiled, it was the result of acts of the defendant after delivery, and, therefore,

a risk assumed by the defendant. According to plaintiff, United Sales, the Navy also failed to mitigate any alleged damages. Further, plaintiff United Sales argues that the defendant knew that United Sales was acting for a disclosed principal, Fulton, and, therefore, that United Sales is not liable to the government, but should look to Fulton for any relief or damages for the allegedly spoiled seafood.

Count II of the complaint, titled "United's Claim for Damages," addresses the funds withheld from United Sales by the government, which according to plaintiff were due to United Sales on other contractual transactions between United Sales and the government, concluded after and unrelated to delivery under the call numbers at issue in the above-captioned case. In Count II, plaintiff alleges that the government also cancelled additional orders placed with United Sales, thereby breaching other contracts with plaintiff United Sales. Further, plaintiff United Sales asserts that the defendant engaged in premature collection efforts. For these alleged violations, United Sales claims $500,-000.00.

Count III of the complaint requests injunctive relief, as follows: "United asks this Honorable Court to determine that United is not indebted to the United States for any sum whatsoever ... and to grant United injunctive relief, both temporary and permanent, precluding the United States from administrative offset and withholding payment of any funds due United pending the orderly disposition of this cause...."[2]

Subsequent to filing its complaint in this court, the court granted the unopposed motion of United Sales to join Fulton as a third-party plaintiff. The defendant then filed its answer and counterclaim. In the counterclaim, the government demanded $181,981.80 from United Sales, which defendant alleges plaintiff owes the government pursuant to the November 23, 1987 decision of the contracting officer on call numbers M26A and M27A under Blanket Agreement N00189–86–A–7150.[3] Defendant asserted in its counterclaim that the lobster tails supplied were undersized and contained unacceptable levels of putrescines, cadaverines and ammonia. Moreover, according to the defendant, the seafood had been stored in a constant zero degree environment from the time of delivery to the time of analysis. Thus, the defendant alleges that any spoilage occurred prior to delivery. Moreover, according to the Navy, the lobsters were packed in such a way that a reasonable inspection failed to detect the defects. Therefore, according to defendant, "[p]laintiff's outstanding liability to defendant for the Navy's payments to United [Sales] for the deficient spiney lobster tails is $123,981.80."

Defendant then filed its motion for partial dismissal, which, following changes in the relevant statute and several rounds of supplemental briefings, is the subject of the instant opinion.[4] In its motion, defendant asserts:

[B]ecause plaintiff never submitted a certified claim to the contracting officer for a final decision upon the matters for which plaintiff now seeks affirmative recovery, this Court lacks subject matter jurisdiction over plaintiff's claim. In addition, we request the Court to dismiss portions of the complaint upon the grounds that this Court has no jurisdiction to grant the injunctive relief plaintiff seeks.

\* \* \* \* \* \*

The question of whether United [Sales] is indebted to the United States is square-

---

**2.** In a letter sent directly to the judge, counsel for United Sales offered to withdraw count III of the complaint as beyond the jurisdiction of the court. Counsel for the plaintiff, United Sales, however, appears to be unaware of the revised declaratory judgment jurisdiction of this court, as is discussed more fully below. The judge ordered the letter filed as part of the court record on June 8, 1995.

**3.** It appears that the government chose not to file an independent lawsuit in federal district court

to enforce the indebtedness of $123,981.80 identified by the contracting officer, in accordance with 28 U.S.C. § 1345 (1988).

**4.** After reviewing plaintiff's complaint and defendant's motion for partial dismissal, this court believes, however, that if defendant is successful, only defendant's counterclaim would remain. As discussed more fully below, however, if plaintiff's claims are dismissed, defendant's counterclaim cannot survive on its own.

ly before this Court.[3] The same cannot be said, however, for the other relief that United [Sales] seeks. In this case, United [Sales] never submitted a claim to the contracting officer, never certified its claim, and never received a final decision of the contracting officer with respect to the claim for which it seeks $500,000 in this Court. As a result, this Court has no jurisdiction to consider United [Sales]' claim for $500,000.[4]

Defendant's explanatory footnotes read:

[3] In our answer to the complaint, we asserted a counterclaim in the amount of $123,981.80, the amount of money, at that time not administratively offset, for which United [Sales] was found liable to the Navy by the contracting officer.

[4] To the extent that United [Sales] seeks recovery for the Navy's allegedly wrongful refusal to pay upon other contracts, Compl. ¶¶ 18–22, United [Sales] must submit certified claims to the contracting officer *of those other contracts,* for United's 'claim arises under the contract or contracts from which payments otherwise due are being withheld, not under the contracts on which the Government's demand was based.' *Snowbird Industries, Inc.,* 87–2 BCA ¶ 19,862 (ASBCA) (1987) [sic]. *Accord Technassociates Inc. v. United States,* 14 Cl.Ct. 200, 208 (1988).

In its brief in response to defendant's motion for partial dismissal, plaintiff, United Sales, states:

Subsequent to the contracting officer's determination, and without notice to plaintiff, the Government proceeded to set off approximately $91,000.00 (the set-off funds) owed to plaintiff in other contracts against the $181,981.80 allegedly owed in this case; thus, when plaintiff filed suit in this honorable Court, in addition to asking this Court to find that plaintiff was not indebted to the Government (Count I of the Complaint), plaintiff has asked for return of any and all funds set off by the Government, as well as additional damages for lost sales and broken contractual relationships (Count II).

Aside from the consideration of whether or not the request for return of the set-off funds constitutes a 'claim,' as a practical matter, even though United Sales, Inc. is the plaintiff in this case and has filed suit, under the principles established by the Contract Disputes Act (hereinafter CDA), the suit is really an appeal from the con-

tracting officer's decision which is final if suit is not timely filed; thus, the claim of plaintiff against the Government for the improper set-off of funds becomes in fact a counterclaim, and Rule 13(a) of this honorable Court provides that a compulsory counterclaim which arises out of a transaction or occurrence that is the subject matter of the petition and does not require the presence of third parties must be prosecuted simultaneously with this suit.

Briefly stated, it is the Government's claim which is at issue, thus no certification is required....

In its reply brief on the motion for partial dismissal, defendant reiterated that no portion of plaintiff United Sales' claim included in the instant complaint had been certified, and that to the extent that plaintiff seeks recovery for the Navy's refusal to pay on contracts other than call numbers M26A and M27A under Blanket Agreement N00189–86–A–7150, United Sales is obligated to submit properly certified claims to the appropriate contracting officer in charge of those other contracts. The record submitted to this court is devoid of any evidence of such certified submissions on the other contracts having been presented to a contracting officer for a contracting officer's final decision.

Thereafter, the court requested the parties to brief the issue of whether the government may continue to pursue its pending counterclaim in the event that the court grants the defendant's motion to dismiss the plaintiff's complaint on the issues of breach of contract and declaratory judgment. The defendant filed a memorandum addressing the issue in which it stated, "[t]hus, should the Court dismiss plaintiff's complaint, it must also dismiss defendant's counterclaim arising under the CDA." Even though previous submissions from the plaintiff did not respond to the court's specific inquiry, counsel for the plaintiff United Sales advised the court that it did not desire to supplement its previously filed submissions.

## DISCUSSION

When reviewing a motion to dismiss, the court may consider all relevant

evidence in order to resolve any disputes as to the truth of the jurisdictional facts alleged in the complaint. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir.1988). The court is required to decide any disputed facts relevant to the issue of jurisdiction. *Id.* at 747.

■ The basic standards for weighing the evidence presented by the parties when evaluating a motion to dismiss for lack of jurisdiction, pursuant to the Rules of the United States Court of Federal Claims (RCFC) 12(b)(1), have been articulated by the United States Supreme Court and the United States Court of Appeals for the Federal Circuit, as follows: "in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *accord Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir.1989). In rendering a decision, the court must presume that the undisputed factual allegations included in the complaint by plaintiff are true. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d at 746; *Miree v. De Kalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977).

■ The burden of establishing this court's jurisdiction over a complaint is on the plaintiff. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Pasco Enterprises v. United States*, 13 Cl.Ct. 302, 305 (1987); *Metzger, Shadyac & Schwartz v. United States*, 10 Cl.Ct. 107, 109 (1986). The court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Moreover, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981).

The jurisdiction of the United States Claims Court, now the United States Court of Federal Claims, under the Tucker Act, 28 U.S.C. § 1491, includes claims "founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).

Prior to enactment of amendments to the Tucker Act in 1982 and passage of the Court of Federal Claims Technical and Procedural Improvements Act of 1992, this court did not have declaratory judgment jurisdiction. In the past, the United States Supreme Court, as well as this court and its predecessor court, the United States Court of Claims, had found consistently that cases seeking relief other than those tied to, and subordinate to, a suit for money damages were not within the jurisdiction of this court. *See United States v. King*, 395 U.S. 1, 4–5, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969); *Glidden Co. v. Zdanok*, 370 U.S. 530, 557, 82 S.Ct. 1459, 1476, 8 L.Ed.2d 671 (1962); *Austin v. United States*, 206 Ct.Cl. 719, 723, *cert. denied*, 423 U.S. 911, 96 S.Ct. 215, 46 L.Ed.2d 140 (1975).

In 1988, however, the Tucker Act was amended, conferring limited declaratory judgment authority on this court over nonmonetary disputes. The amendment provides in pertinent part:

(3) To afford complete relief on any contract claim brought before the contract is awarded, the court shall have exclusive jurisdiction to grant declaratory judgments and such equitable and extraordinary relief as it deems proper, including but not limited to injunctive relief. In exercising this jurisdiction, the court shall give due regard to the interests of national defense and national security.

28 U.S.C. 1491(a)(3). *See also Continental Heller Construction v. United States*, 21 Cl. Ct. 471, 473 (1990). The court in *Continental* also advised, however, that a claim for declaratory relief cannot stand alone and must be brought in conjunction with a claim for money damages. *Continental Heller Construction v. United States*, 21 Cl.Ct. at 475.

The declaratory judgment jurisdiction of this court was further expanded by the Court

of Federal Claims Technical & Improvements Act of 1992, as follows:

(b) JURISDICTION OF THE COURT OF FEDERAL CLAIMS.—(1) Section 1491(a)(2) of title 28 United States Code, is amended in the last sentence by inserting before the period at the end the following: ", including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act".

(2) The amendment made by paragraph (1) shall be effective with respect to all actions filed before, on, or after that date of the enactment of this Act, except for those actions which, before such date of enactment, have been the subject of—

(A) a final judgment of the United States Claims Court, if the time for appeal of that judgment has expired without an appeal having been filed, or

(B) a final judgment of the Court of Appeals for the Federal Circuit.

The Court of Federal Claims Technical and Procedural Improvements Act of 1992, Pub.L. 102–572, § 907(b), 106 Stat. 4506 (1992). The legislative history of the 1992 amendments, although sparse, is unequivocal in its intent regarding the Tucker Act amendments, as follows:

to clarify the power of the Court of Federal Claims to hear appeals of all contracting officers' final decisions, regardless of whether the dispute involves a claim for money currently due. The amendment will restore the option of appealing any final decisions to either the Court of Federal Claims or agency board of contract appeals as was intended in the Contract Disputes Act. The amendment does not authorize contractors to seek declaratory judgments from the Court of Federal Claims in advance of a dispute and final decision, and will not permit contractors to seek injunctions or declaratory judgments that would interfere with the contracting officer's right to direct the manner of performance under the changes clause. A contracting officer's final decision under the Contract Disputes Act will remain a jurisdictional prerequisite to review by the Court of Federal Claims. This amendment would be effective immediately with respect to all pending and future cases.

138 Cong.Rec. S17,798, S17,799 (daily ed. Sept. 30 1992) (statement of Sen. Heflin).

■ Therefore, this court now has jurisdiction to entertain certain types of requests for declaratory relief in government contract cases. Moreover, as a result of the amendments, the declaratory relief powers of the court were made retroactive. Thus, plaintiff's claim for declaratory relief must be determined, not with reference to the law applicable at the time the lawsuit was filed, but in accordance with the new standards, which give the court broader declaratory relief powers.

■ The Tucker Act, 28 U.S.C. 1491, however, does not create a substantive right of recovery against the United States and is only a jurisdictional statute. *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). Therefore, the plaintiffs must look beyond the Tucker Act as the requisite money mandating predicate upon which to perfect jurisdiction for its claims in this court. In the instant case, the plaintiffs look to the Contract Disputes Act, 41 U.S.C. §§ 601–609 (1982) (CDA). *See Ashgar v. United States,* 23 Cl.Ct. 226, 230–31 (1991); *Westech Corp. v. United States,* 20 Cl.Ct. 745, 748 (1990); *Millard v. United States,* 14 Cl.Ct. 55, 58 (1987).

■ To prevail on a claim seeking damages pursuant to the CDA, the CDA requires, as a jurisdictional prerequisite, that a contractor's claim, which is in excess of $50,-000.00, be submitted in writing to the contracting officer for decision, together with the proper certification, as required by 41 U.S.C. § 605(a). The CDA language states that:

For claims of more than $50,000, the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract

adjustment for which the contractor believes the government is liable.

41 U.S.C. § 605(c)(1).

The language of the CDA and its legislative history make it clear that the Act was passed to foster the prompt, efficient resolution of disputes between private contractors and the government. S.Rep. No. 1118, 95th Cong., 2d Sess. 1 (1978). The certification requirement was enacted to hold contractors liable for fraudulent, unwarranted and inflated claims and to encourage settlements. *See Skelly & Loy v. United States,* 231 Ct.Cl. 370, 376 n. 11, 685 F.2d 414, 418 n. 11 (1982); *Donald M. Drake Co. v. United States,* 12 Cl.Ct. 518, 519 (1987). Stated otherwise, the contractor's certification assures that the claim accurately reflects the estimated value of the case. *W.H. Moseley Co. v. United States,* 230 Ct.Cl. 405, 407, 677 F.2d 850, 852 (1982), *cert. denied,* 459 U.S. 836, 103 S.Ct. 81, 74 L.Ed.2d 77 (1982).

The legislative history of the CDA evidences the importance that Congress appropriately placed on requiring that a claim be certified. Prior to the enactment of the certification requirement, Admiral Hyman G. Rickover proposed the addition of the certification requirement, emphasizing its importance as a deterrent to the submission of unwarranted contractor claims. *See Contracts Dispute Act of 1978; Joint Hearings on S.2292, S.2787 & S.3178 Before the Subcomm. on Federal Spending Practices and Open Government of the Senate Comm. on Governmental Affairs and the Subcomm. on Citizens and Shareholders Rights and Remedies of the Senate Comm. on the Judiciary,* 95th Cong., 2d Sess. 21 (1978). Admiral Rickover proposed that the Act should:

> [r]equire as a matter of law that prior to evaluation of any claim, the contractor must submit to the Government a certificate signed by a senior responsible contractor official, which states that the claim and its supporting data are current, complete and accurate. In other words, you put the contractor in the same position as our working man, the income tax payer who must certify his tax return.

*Id.* at 21. Admiral Rickover contended that subjecting contractors to financial risk would greatly deter the submission of such false or inflated claims. *See Paul E. Lehman, Inc. v. United States,* 230 Ct.Cl. 11, 15, 673 F.2d 352, 355 (1982).

For cases filed in this court prior to the Federal Claims Technical and Improvements Acts of 1992, Pub.L. No. 102–572, § 907(a), 108 Stat. 4506 (amending 41 U.S.C. § 605(c)), signed into law on October 29, 1992, the subject matter jurisdiction of this court in government contract cases was defined, in part, by whether or not the certification had been executed properly and submitted to the contracting officer in accordance with the applicable statute and regulations. *See United States v. Grumman Aerospace Corp.,* 927 F.2d 575, 579 (Fed.Cir.1991); *Ball, Ball & Brosamer, Inc. v. United States,* 878 F.2d 1426, 1428–29 (Fed.Cir.1989); *National Sur. Corp. v. United States,* 20 Cl.Ct. 407, 409–10 (1990). Furthermore, the courts consistently held that in determining the validity of the certification, the regulation should be strictly construed. *Ingersoll–Rand Co. v. United States,* 24 Cl.Ct. 692, 694 (1991) (citing *United States v. Grumman Aerospace Corp.,* 927 F.2d at 575); *Reliance Ins. Co. v. United States,* 23 Cl.Ct. 108, 116 (1991).

For cases filed after October 29, 1992, the Court of Federal Claims Technical and Procedural Improvements Act does not eliminate the requirement of certification. The Act, however, obviates the need for dismissal of uncertified claims, which under the previous statutory framework, had to be refiled following certification and were subject to a new filing fee. Following the 1992 amendments, the court may retain jurisdiction over a timely filed claim and stay proceedings while proper certification is perfected.[5] The

---

5. The United States Court of Federal Claims Technical and Procedural Improvements Act of 1992 provides in pertinent part:

SEC. 907. JURISDICTION.

(a) CERTIFICATIONS.—(1) Section 6(c) of the Contract Disputes Act of 1978 (41 U.S.C. 605(c)) is amended—
(A) in paragraph (1) in the second sentence—
(i) by striking "and" after "belief,"; and

revised Act avoids, for the future, the possible injustice resulting from the application of the statute of limitations to cases which might be time-barred after dismissal for failure to certify.

■ Although the result of the 1992 amendments to the Contract Disputes Act is that failure to certify a claim by a senior official or other authorized person is no longer a jurisdictional defect to a lawsuit filed in this court, this provision is of prospective effect only and leaves unchanged the certification requirement for cases, such as the instant case, already pending in this court prior to October 29, 1992. *See* this court's earlier discussion of the same issue in *Blake Construction Co. v. United States*, 28 Fed.Cl. 672, 680 (1993), *aff'd without op.*, 29 F.3d 645 (1994). Prior to passage of the 1992 legislation, the courts held that " '[u]nless that [certification] requirement is met, there is simply no claim that the court may review under the Act.' " *W.M. Schlosser Co. v. United States*, 705 F.2d 1336, 1338 (Fed.Cir.1983) (quoting *Paul E. Lehman*, 673 F.2d at 355); *see also National Sur.*, 20 Cl.Ct. at 409–410; *Arlington Alliance, Ltd. v. United States*, 231 Ct.Cl. 347, 357, 685 F.2d 1353, 1359 (1982). Therefore, notwithstanding the 1992 legislative enactment, because the provision was not made retroactive, certification remains a jurisdictional prerequisite for the litigation in this court of the government contract claims presented in the complaint filed by United Sales and joined in by Fulton as a party plaintiff.

■ In his Brief in Response to Defendant's Motion for Partial Dismissal, counsel for United Sales makes several confusing statements. Counsel first states that because of the posture of the case in which "the basic subject matter of the dispute concerns a government claim and not a claim by the contractor, certification is not required." Yet, counsel also asserts in that same document that the necessary certification steps have been completed, either incident to the issuance of the November 23, 1987 contracting officer's decision on call numbers M26A and M27A of Blanket Agreement N00189–86–A–7150, or on the unidentified other contracts from which the government allegedly improperly withheld $91,000.00.[6] In its complaint, however, plaintiff, United Sales, makes no allegation that its claim for the monies allegedly set off against contracts other than the ones at issue in this case, have ever been certified or submitted to the appropriate contracting officer before seeking relief in this court, nor is such documentation in the record. In fact, nowhere in its filings does plaintiff United Sales offer this court any substantive information about these alleged other contracts. Consequently, the unsupported statements made by counsel for United Sales are insufficient to overcome

(ii) by inserting before the period at the end of the sentence the following: ", and that the certifier is duly authorized to certify the claim on behalf of the contractor"; and

(B) by adding at the end the following:

"(6) The contracting officer shall have no obligation to render a final decision on any claim of more than $50,000 that is not certified in accordance with paragraph (1) if, within 60 days after receipt of the claim, the contracting officer notifies the contractor in writing of the reasons why any attempted certification was found to be defective. A defect in the certification of a claim shall not deprive a court or an agency board of contract appeals of jurisdiction over that claim. Prior to the entry of a final judgment by a court or a decision by an agency board of contract appeals, the court or agency board shall require a defective certification to be corrected.

"(7) The certification required by paragraph (1) may be executed by any person duly authorized to bind the contractor with respect to the claim.".

"(2) The amendment made by paragraph (1)(B) shall be effective with respect to all claims filed before, on, or after the date of the enactment of this Act, *except for those claims which, before such date of enactment, have been the subject of an appeal to an agency board of contract appeals or a suit in the United States Claims Court.*

The United States Court of Federal Claims Technical and Improvements Act of 1992, Pub.L. No. 102–572, § 907(a), 106 Stat. 4506 (amending 41 U.S.C. § 605(c)) (emphasis added).

6. In its brief in response to defendant's motion for partial dismissal, counsel for plaintiff United Sales states:

Plaintiff's claims for both the $181,981.80 and the $91,000.00 due on other contracts have been previously certified and if set-off funds are considered as a separate claim, the plaintiff's claim for the set-off funds arises from the same transaction and is properly before the Court.

defendant's motion to dismiss. *See Lee v. United States*, 33 Fed.Cl. 374, 378 (1995) (citing *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983)).

█ The instant case presents an unusual situation. The government paid plaintiff, United Sales, fully all the monies due for deliveries of lobster tails made pursuant to call numbers M26A and M27A of Blanket Purchase Agreement N00189–86–A–7510, and plaintiff, United Sales, in turn, paid third-party plaintiff Fulton its fair share of that payment. Only later, upon discovery of alleged defects in the quality of the product delivered, did the government withhold monies allegedly due to United Sales on other unrelated contracts between plaintiff United Sales and the defendant. Therefore, because United Sales was fully paid on call numbers M26A and M27A of Blanket Purchase Agreement N00189–86–A–7510, if plaintiff United Sales has a legitimate claim against the government regarding the $91,000.00 withheld, it must be on a contract or contracts other than the one which is the subject of the contracting officer's November 23, 1987 opinion, and the subject of the instant lawsuit. Regarding delivery of spiney lobster tails pursuant to call numbers M26A and M27A of Blanket Purchase Agreement N00189–86–A–7150, the basis of the contractual relationship addressed by plaintiff United Sales in the instant complaint, the record is clear that the government fully paid its obligations to United Sales. If plaintiff, United Sales, has a claim against the defendant under other contracts, it should have framed its complaint as seeking damages for failure of the government to pay pursuant to those other contractual obligations. Moreover, prior to initiating such action, since the claim is for at least $91,000.00 (the monies withheld) or some additional part of $500,000.00 (the amount prayed for in the above-captioned complaint), both clearly in excess of $50,000.00, plaintiff, United Sales, would have had to demonstrate that a properly certified claim or claims had been presented to the appropriate contracting officer for a final decision. Therefore, based on the complaint and the record currently before this court, as required by the Contract Disputes Act, 41 U.S.C. 605(c)(1),

plaintiff United Sales has failed to demonstrate that prior to seeking compensation in this court, it had presented a certified claim to the contracting officer for the monies demanded in the complaint. Thus, Counts I and II of plaintiff's complaint must be dismissed.

█ Further, although this court has expanded declaratory judgment jurisdiction in government contract cases, that jurisdiction should not be applied in cases, such as the instant case, in which the contract at issue has not been pursued properly through the appropriate administrative channels. The failure of plaintiff United Sales to present a properly certified claim to the appropriate contracting officer forces this court to conclude that declaratory judgment on the set off amount would be premature. Moreover, because a claim for declaratory relief cannot stand alone and must be brought in conjunction with a suit for money damages, *Continental Heller Construction v. United States*, 21 Cl.Ct. at 475, and because the plaintiff has been fully paid on call numbers M26A and M27A of Blanket Purchase Agreement N00189–86–A–7510, and no claim remains, this court concludes that plaintiffs' claims must be dismissed. Count III of plaintiff's complaint, therefore, also must be dismissed.

Furthermore, having concluded that plaintiffs' complaint should be dismissed in its entirety, defendant's counterclaim also cannot stand alone and, likewise, must fail. *Somali Development Bank v. United States*, 205 Ct.Cl. 741, 751–52, 508 F.2d 817, 822 (1974); *Universal Coatings/Won Ill. Co. v. United States*, 24 Cl.Ct. 241, 248 n. 4 (1991); *Joseph Morton Co. v. United States*, 3 Cl.Ct. 780, 783 (1983), *aff'd*, 757 F.2d 1273 (Fed.Cir. 1985). Therefore, because this court lacks independent jurisdictional authority over a government claim against a contractor, defendant's counterclaim, similarly, must be DISMISSED.

*CONCLUSION*

After a thorough review of the record in this case, the court has determined that the government's motion to dismiss is, hereby, GRANTED, and the case brought by plain-

tiff United Sales, as joined in by third-party plaintiff, Fulton Lobster Company, is, hereby, fully DISMISSED. Defendant's counterclaim is also DISMISSED. The clerk of court is directed to enter judgment in accordance with this order.

IT IS SO ORDERED.

United States Court of Federal Claims.