ALASKA PULP CORPORATION,
Plaintiff,

v.

The UNITED STATES, Defendant.

No. 95–153C.

United States Court of Federal Claims.

May 30, 1997.

Terrence O'Donnell, Washington, DC, attorney of record for plaintiff, with whom were Ari S. Zymelman, Robert Van Kirk, Williams & Connolly, Washington, DC, and with whom on brief were Richard A. Kramer and Michael J. Lawson, Steefel, Levitt & Weiss, San Francisco, CA, of counsel.

Jane W. Vanneman, for defendant, with whom on brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Geoffrey C. Cook, Laureen Kapin, Paul S. Padda, Civil Division, U.S. Department of Justice, Washington, DC, and James Ustasiewski, and Leslie Lagomarcino, U.S. Department of Agriculture, Office of the General Counsel, of counsel.

## OPINION

MARGOLIS, Judge.

In this action for breach of contract and taking of property without just compensation, plaintiff Alaska Pulp Corporation's ("APC") fifth claim for relief requests that this Court determine the parties' rights under a land patent. Pursuant to RCFC 12(b)(1), Defendant requests that this Court dismiss the fifth claim of APC's first amended complaint for lack of subject matter jurisdiction. Defendant contends that this Court lacks subject matter jurisdiction over APC's fifth claim because that claim is not governed by the Contract Disputes Act (CDA). Moreover, defendant contends that, even if APC's fifth claim would otherwise be properly considered under the CDA, this Court lacks jurisdiction to consider the claim because it was not submitted to the contracting officer for decision, and also is not ripe for review.

Plaintiff responds that this Court does have jurisdiction over plaintiff's fifth claim because that claim is properly asserted under the CDA as part of the breach of contract action that forms the basis for plaintiff's other claims for relief. Plaintiff also contends that APC's fifth claim is ripe because APC's rights in the land granted under a land patent will necessarily be determined when this court determines the breach of contract and takings issues that provide the foundation for

APC's other claims. Finally, plaintiff alleges that, even if the land patent and a contract to execute that land patent are not considered part of the contract that forms the basis for plaintiff's first four claims, the patent and the agreement implementing the patent may be independently considered under the CDA. Because the Court agrees with the defendant that this Court lacks jurisdiction over plaintiff's fifth claim for relief, the Court grants defendant's partial motion to dismiss without prejudice.

## BACKGROUND

On October 15, 1957, the Alaska Pulp Corporation[1] and the United States entered into a 50 year contract ("Contract"), No. 12–11–010–1545, for the purchase of timber in the Sitka, Alaska region of the Tongas National Forest. Pursuant to the Contract, APC was required to build a pulp mill in Sitka that was adjacent to the timber sale area.

On August 14, 1958, APC and the United States entered into an agreement ("Agreement") providing that, upon APC's installation of the pulp mill, the United States would convey to APC certain land upon which the pulp mill and related facilities were built. The Agreement referenced the Contract and provided that the land conveyed was "the site for the proposed pulp mill which [APC] is required to install in accordance with the terms of the ... [No. 12–11–010–1545] timber sale contract." The Agreement also provided, in relevant part, that APC "shall use such land only in connection with or for the processing of timber ... [and u]pon non-use for five years of the pulp mill installed on the land ... or upon use of such land other than in connection with or for the processing of timber ... the rights of the grantee to such land shall terminate ... [and] title to such land [shall be] revested in the United States ..."

On or about October 18, 1960, following payment by APC to the United States, the United States executed a land patent ("Patent") granting APC 143.87 acres of land. The Patent incorporated the restriction in-

---

1. In 1957, the Alaska Pulp Corporation was known as the Alaska Lumber & Pulp Company.

APC is the successor to Alaska Lumber & Pulp Company.

cluded in the Agreement providing, with certain exceptions not relevant here, that the land would be used "only in connection with or for the processing of timber," and that title to the land would revest in the United States "[u]pon non-use by the patentee, its successors or assigns, for five consecutive years of the pulp mill installed on the land herein granted, or upon use of such land other than in connection with or for the processing of timber ..." Thus, APC alleges, the Contract required APC to install the pulp mill, and the Agreement obligated the United States to convey the land upon which the pulp mill was required to be installed. APC further alleges that the Patent evidences the United States' performance of its obligation, according to the terms of the Agreement, to convey land to APC.

Operation of the pulp mill continued until 1993 when, APC contends, the United States made unilateral changes to the Contract that forced indefinite suspension of APC's operations. At that time, APC explored alternative methods of processing timber on the land granted by the Patent. These alternative methods did not include operation of the pulp mill. With the support of the Forest Service, APC alleges it progressed toward conversion of the pulp mill to a medium density fiberboard (hereinafter "MDF") plant.

APC's timber contract was terminated on April 14, 1994. APC alleges that the termination of the Contract prevented APC from converting the pulp mill to an MDF plant. The termination of the Contract, APC further asserts, raised questions regarding the rights of APC and the United States to the land granted to APC under the Patent.

On December 23, 1994, pursuant to the Contract Disputes Act, APC submitted a written claim (hereinafter "Claim") to the Contracting Officer alleging that the United States wrongfully terminated the Contract. One of APC's sub-claims requested relief as a result of the decline in value of the pulp mill and sawmill resulting from the government's alleged breach, and taking, of APC's Contract. On March 3, 1995, APC filed a complaint in this court seeking a declaration that, in effect, the termination of APC's Con-

tract was unjustified and the United States breached its contract with APC. On November 9, 1995, the Contracting Officer issued a decision denying APC's claims.

On May 16, 1995, APC filed a motion to file a First Amended Complaint, which was granted by the Court on June 7, 1995. APC's First Amended complaint seeks relief on five grounds. The first four claims seek monetary relief for (1) breach of settlement contract; (2) wrongful termination of APC's contract; (3) breach of covenant of good faith and fair dealing; and (4) just compensation for taking. Plaintiff's fifth claim seeks declaratory relief based upon the facts giving rise to the first four claims and alleges, in pertinent part:

58. Plaintiff realleges each and every allegation in paragraphs 1 through 42, inclusive.

59. An actual controversy exists between plaintiff and defendant in that plaintiff claims that defendant breached APC's Contract and defendant claims that plaintiff breached APC's Contract. Such controversy must be resolved so that the rights and obligations of the parties under the Patent may be determined.

60. As a result of defendant's breach of APC's Contract, plaintiff is entitled to a determination that the land granted by the Patent should be vested in the plaintiff without restriction.

## DISCUSSION

This action requires the Court to determine whether the Court of Federal Claims has jurisdiction over a claim for declaratory relief to determine a plaintiff's rights in real property granted under a land patent, where those rights are integral to the performance of a timber contract between that party and the United States, but where the claim for declaratory relief was never submitted to the contracting officer. Because defendant asserts that plaintiff's fifth claim fails to state a claim under RCFC 12(b)(1), this court will construe plaintiff's allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *United Sales, Inc. v. United States,* 34 Fed.Cl. 88, 93

(1995). When subject matter jurisdiction is questioned, however, "the non-moving party bears the burden of establishing the court's jurisdiction." *Pevar Co. v. United States*, 32 Fed.Cl. 822, 824 (1995) (citing *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988)).

Defendant first argues that APC's fifth claim for relief is neither associated with nor subordinate to the Contract that forms the basis for APC's breach of contract action on its other four claims. Therefore, defendant contends, this Court lacks subject matter jurisdiction because, independently, the land patent claim lacks a request for monetary relief, and is not properly considered under the CDA. Defendant further contends that jurisdiction has not been established because APC's claim for a declaration of rights under the land Patent was never submitted for decision to the contracting officer. Finally, defendant contends that APC's fifth claim for relief is not ripe for decision.

Plaintiff responds that APC's fifth claim is properly before the Court under the Tucker Act and the CDA as part of Contract No. 12–11–010–1545. Plaintiff further responds that, even if the land patent and the agreement to execute that patent are not part of the timber Contract that forms the basis for APC's other claims, there exists independent jurisdiction to grant declaratory relief under the CDA and the Tucker Act. Plaintiff also contends that its claim need not have been submitted to the contracting officer for decision and, even were such submission required, APC's fifth claim for relief was encompassed in APC's other claims for relief under the Contract. Finally, plaintiff asserts that its fifth claim is ripe for decision as part of the Contract that forms the basis for APC's breach of contract and taking claim.

*I. Sovereign Immunity, Claims for Non-Monetary Relief, and Submission to the Contracting Officer Under the CDA*

■ As the Supreme Court has recognized, the United States is a sovereign entity, immune from suit, save as it consents to be sued. *Hercules Inc. v. United States*, —— U.S. ——, ——, 116 S.Ct. 981, 985, 134 L.Ed.2d 47 (1996); *United States v. Testan*,

424 U.S. 392, 399, 96 S.Ct. 948, 953–54, 47 L.Ed.2d 114 (1976). This Court, the Court of Federal Claims, " 'can take cognizance only of those [claims] which by the terms of some act of Congress are committed to it.' " *Hercules Inc.*, —— U.S. at ——, 116 S.Ct. at 985 (quoting *Thurston v. United States*, 232 U.S. 469, 476, 34 S.Ct. 394, 395, 58 L.Ed. 688 (1914)). Waiver of sovereign immunity must be unequivocally expressed; waiver cannot be implied. *See Testan*, 424 U.S. at 399, 96 S.Ct. at 953–54.

■ The Tucker Act provides the Court of Federal Claims with jurisdiction to determine, among other things, claims against the United States founded upon an express or implied-in-fact contract with the United States. *See* 28 U.S.C. § 1491(a); *Hercules Inc.*, —— U.S. at ——, 116 S.Ct. at 985. In the present action, § 1491(a) grants the Court jurisdiction over plaintiff's claim that the United States breached its Contract with APC. The availability of equitable relief in the Court of Federal Claims is, however, limited. *See* 28 U.S.C. § 1491. Where, as here, a claim is made under the Contract Disputes Act ("CDA"), 41 U.S.C. § 601 *et seq.*, the court's ability to provide equitable relief is defined by 28 U.S.C. § 1491(a)(2). *See Sharman Co., Inc. v. United States*, 2 F.3d 1564, 1572–73 (Fed.Cir.1993); *United Sales, Inc.*, 34 Fed. Cl. at 94.

Section 1491(a)(2) provides, in pertinent part, that:

[t]he Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978, including a dispute concerning termination of a contract, rights in tangible or intangible property ... and other non-monetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act.

The plain language of the statute, therefore, indicates that the court has jurisdiction to render judgments in both monetary and non-monetary disputes where a decision of the

contracting officer has been rendered according to the provisions of the CDA.[2]

■ To the extent there exists any ambiguity in the 1992 amendment to § 1491(a)(2)—and the Court does not find § 1491(a)(2) to be ambiguous—that ambiguity is resolved by reference to the legislative history of the Court of Federal Claims Technical and Improvements Act of 1992 ("Act"), Pub.L. No. 102–572, 106 Stat. 4506 (1992). The legislative history of the Act confirms that Congress intended to expand the equitable jurisdiction of the Court of Federal Claims in CDA cases. Senator Heflin commented that the Act would:

> amend the Tucker Act to clarify the power of the Court of Federal Claims to hear appeals of all contracting officers' final decisions, regardless of whether the dispute involves a claim for money currently due.... The amendment does not authorize contractors to seek declaratory judgments from the Court of Federal Claims in advance of a dispute and final decision, and will not permit contractors to seek injunctions or declaratory judgments that would interfere with the contracting officer's right to direct the manner of performance under the changes clause. A contracting officer's final decision under the Contract Disputes Act will remain a jurisdictional prerequisite to review by the Court of Federal Claims.

138 Cong.Rec. S17798–99 (daily ed. October 8, 1992) (statement of Sen. Heflin). Thus, although non-monetary relief is available, under § 1491(a)(2), for claims that fall under the CDA, relief is not available, and the Court of Federal Claims does not have jurisdiction to render judgment, on claims for relief under the CDA prior to a final decision by a contracting officer.[3] See Sharman, 2 F.3d at 1572–73; see also Case, Inc., 88 F.3d at 1008–09 (final decision or deemed denial of contractor's claims by contracting officer are prerequisite to exercise of jurisdiction by the Court of Federal Claims).

■ In the present case, plaintiff's fifth claim was never submitted to the contracting officer, and plaintiff has offered no evidence indicating that the contracting officer has rendered a final decision on plaintiff's fifth claim. Plaintiff, however, claims that, according to Sharman Co., Inc. v. United States, 2 F.3d 1564, the court has jurisdiction over plaintiff's fifth claim even though it was not submitted to the contracting officer. In the alternative, plaintiff claims that its fifth claim for relief was encompassed in plaintiff's first claim for relief, which seeks damages based on "the reduction of value of APC's Pulp and Saw Mill facilities caused by the inability to operate such facilities ...," and "the enterprise value of APC with an economically viable supply of timber as provided under the Settlement Contract."

Plaintiff misinterprets Sharman. In Sharman, the plaintiff Sharman Company had contracted with the government to manufacture steel water tanks. Sharman Co., Inc., 2 F.3d at 1566. Sharman eventually repudiated the contract and the government terminated the contract for default through a notice and final decision of termination issued by the contracting officer. Id. Approximately one month later, in September 1989, the government sent a letter to the contrac-

---

2. Section 605(a) of the CDA provides in pertinent part that, "[a]ll claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for decision...." Sections 605 and 609 further indicate that a CDA action may be brought in the Court of Federal Claims only if the contracting officer issued a final decision on the contractor's claim or a contractor's claim has been "deemed denied." See Case, Inc. v. United States, 88 F.3d 1004, 1008–09 (Fed. Cir. 1996).

3. The Federal Circuit has firmly rejected the argument that equitable relief is available under § 1491(a)(2) and the CDA only when an equitable claim is accompanied by a claim for mone-

tary relief. In Sharman, the court found that Sharman had standing to challenge a default termination under the CDA and § 1492, even though that challenge sought declaratory relief and was unaccompanied by a monetary claim. Sharman, 2 F.3d at 1572; see id. at 1577–78 (Schall, J., dissenting on other grounds); see also Daff v. United States, 78 F.3d 1566, 1573 n. 10 (Fed.Cir.1996) ("In October of 1992, Congress amended the Tucker Act to give the Court of Federal Claims jurisdiction over pure default terminations in which no monetary claim was asserted.") In any event, plaintiff's fifth claim for non-monetary relief in this action is accompanied by plaintiff's claims for monetary relief for breach of the Contract.

tor demanding the repayment of progress payments already paid under the contract. *Id.* at 1566–67. Sharman then sued in the Claims Court[4] seeking invalidation of the default termination, conversion of the default termination to a termination for convenience, recovery of uncompensated costs incurred in the contract's performance, and entitlement in quantum meruit to the government's progress payments. *Id.* at 1567. On defendant's motion to dismiss, the Claims Court dismissed Sharman's claim for termination for convenience costs, finding that the claim had not been quantified and had never been submitted to the contracting officer. *Id.* The Court also found that it lacked jurisdiction to consider the contractor's challenge to the government's default termination as an independent claim. *Id.* The Court, however, refused to dismiss the default termination because the court found jurisdiction to consider Sharman's challenge to the default termination as an issue related to the government's money claim for the return of the progress payments as contained in the September letter from the government to Sharman. *Id.* Following the Court's ruling, Sharman amended its complaint to challenge the government's right of payment to the amount representing unliquidated progress payments. *Id.* at 1567–68. The government then counterclaimed for unliquidated progress payments. *Id.* at 1568. Ultimately, the Claims Court entered judgment for the government on the unliquidated progress payments and dismissed the contractor's remaining allegations. *Id.*

On appeal, the Federal Circuit reversed and remanded. *Id.* at 1573. First, the Federal Circuit found that the Claims Court lacked jurisdiction to consider the government's claim for the return of unliquidated progress payments because there was no final contracting officer's decision on that claim prior to suit in the Claims Court, as required by the CDA. *Id.* at 1568–70. The Circuit also upheld the Claims Court's determination that it lacked jurisdiction to entertain the contractor's claim for termination for convenience costs because, there too, there

had been no final decision by the contracting officer prior to suit. *Id.* at 1573. With regard to Sharman's request for declaration that the government's termination for default was unlawful, however, the Circuit found that the Claims Court did have jurisdiction. *Id.* at 1572–73. Although Sharman's claim was an independent claim for declaratory relief, the Claims Court was not precluded from exercising jurisdiction, because there was a final decision of the contracting officer on that claim. *Id.* at 1570, 1572 & n. 12.

In the present case, plaintiff has produced no evidence that its fifth claim was submitted to the contracting officer or that there was a final decision or deemed denial by the contracting officer on plaintiff's fifth claim. Without a final decision by the contracting officer, *Sharman,* the CDA, and 28 U.S.C. § 1492(a)(2) teach that this court lacks jurisdiction to entertain plaintiff's fifth claim.

█ Nor is it possible for the court to find that plaintiff's fifth claim for relief was encompassed in those claims plaintiff did submit to the contracting officer, and upon which a decision of the contracting officer has been rendered. As the Federal Circuit explained in *Joseph Morton Co., Inc. v. United States,* "Congress did not intend the word 'claim' to mean the whole case before the contractor. and the Government; but, rather, that 'claim' mean each claim under the CDA ... that is one part of a divisible case." 757 F.2d 1273, 1281 (Fed.Cir.1985); *see also Case, Inc.,* 88 F.3d at 1010; *Sharman Co., Inc.,* 2 F.3d at 1569. In *Sharman* the Federal Circuit explained that, for purposes of the CDA, the contractor's initial claim for unliquidated progress payments and the government's subsequent counterclaim for the return of those progress payments were the same claim because they were mirror images of each other, involving "the same money based on the same partial performance, only under a different label," 2 F.3d at 1571. In the present case, plaintiff's fifth claim is not the "mirror image" of any of plaintiff's four other claims asserted in plaintiff's complaint.

---

4. The United States Claims Court became the United States Court of Federal Claims on October 29, 1992 pursuant to Title IX of the Federal Courts Administration Act of 1992, Pub.L. No. 102–572, 106 Stat. 4506 (1992).

Plaintiff's claim for a declaration of the parties' rights under the land patent is not the same as plaintiff's claim for breach, and taking, of the timber Contract. Rather, plaintiff's fifth claim is dependent on different facts and legal theories, and requests an equitable remedy wholly different from plaintiff's request for monetary relief for breach, and taking, of the timber Contract. As the Federal Circuit indicated in *Case, Inc.*, merely because two claims "arose out of the same underlying set of facts and involved [similar] allegations ... does not alter the fact that [there exist] ... different claims." 88 F.3d at 1010 (claim for unliquidated progress payments is not the same claim, under the CDA, as claim for equitable adjustment and lost profits under the same contract). Thus, plaintiff's fifth claim, for a declaration of the parties rights under the land Patent, is not a claim or dispute that plaintiff ever submitted to the contracting officer, nor is it a claim or dispute upon which a final decision of the contracting officer has been rendered or deemed denied. Accordingly, the court holds that it lacks jurisdiction to entertain plaintiff's fifth claim for relief. Therefore, the Court need not address defendant's contention that plaintiff's fifth claim is not ripe for review.

## CONCLUSION

For the foregoing reasons, the Court concludes that plaintiff's fifth claim must be dismissed because it is not a claim within the jurisdiction of this Court. Accordingly, defendant's motion to dismiss plaintiff's fifth claim for relief is granted without prejudice.